IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| **NICOLE MOSS, et al.**<br><br>**Plaintiffs,**<br><br>v.<br><br>**BREWERS HILL REALTY, LLC, *et al*.**<br><br>**Defendants.** | Case No.: 24-cv-02722-BAH |

**PLAINTIFFS' SUPPLEMENTAL BRIEF ON THE AMOUNT IN CONTROVERSY**

Plaintiffs, Nicole Moss and Helen Mohan ("Plaintiffs"), by and through undersigned counsel, hereby respond to the Court's request for supplemental briefing on the amount in controversy (ECF40).

**I.     Legal Standard**

Under CAFA, the district court has original jurisdiction when, among other things, the amount in controversy exceeds $5 million. 28 U.S.C.S. § 1332(d)(2)(A). In most cases, the amount of damages claimed by the plaintiff controls the amount in controversy determination and, if the plaintiff claims a sum sufficient to satisfy the statutory requirement, a federal court may dismiss only if it is legally certain that the plaintiff cannot recover the amount claimed. *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 638 (4th Cir. 2010) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288, 58 S. Ct. 586, 82 L. Ed. 845 (1938)).

1

In arguing to remove jurisdiction, "the legal impossibility of recovery [of the amount claimed] must be so certain as virtually to negat[e] the plaintiff's good faith in asserting the claim. *McDonald v. Patton*, 240 F.2d 424, 426 (4th Cir. 1957). Any doubt should be resolved, for jurisdictional purposes, in favor of the subjective good faith of the plaintiff. *Id*. And if the complaint in good faith alleges a sufficient amount in controversy, "[e]vents occurring subsequent" to the filing of the complaint "which reduce the amount recoverable below the statutory limit do not oust jurisdiction." *JTH Tax* at 638 (citing *Saint Paul*).

The question is not what damages the plaintiff will recover, but what amount is 'in controversy' between the parties. *Lanier v. Norfolk S. Corp.*, 256 F. App'x 629, 631-32 (4th Cir. 2007) (internal citations omitted). Where, as here, the plaintiffs seek declaratory or injunctive relief, the amount in controversy is measured by the value of the object of the litigation. *JTH Tax* at 637.

Because of this heavy burden, dismissals based on the amount in controversy are "fairly rare." *Iguana Co. Ltd. P'ship v. Balt. Ctr. for Performing Arts, Inc.*, 651 F. Supp. 1348, 1349 (D. Md. 1987).

## II. Argument

### A. Whether any Plaintiffs or proposed Class Members Vacated Due to the Pool Collapse

Plaintiffs are unaware whether any individual proposed class members vacated their apartment as a direct result of the pool collapse. Counsel is aware of several proposed class members, along with Plaintiff, Helen Mohan, who declined to renew their lease at least in part because of the disruption and loss of use an enjoyment of the common areas. But, as

set forth above, events occurring after the Complaint was filed are not considered when evaluating whether the Court has jurisdiction over the matter.

### B. *Additional and Continuing Damages*

The pool collapse occurred on September 20, 2024. Compl. at 2. The Complaint was filed four days later. The amount in controversy is based on the allegations at the time of filing and subsequent events that may reduce the amount in controversy are irrelevant when deciding a motion to dismiss on jurisdictional grounds. *See JTH Tax*, *supra*. At the time of filing, Plaintiffs alleged, among other things, that the pool collapse was evidence of structural damage to the entire complex that rendered the building uninhabitable. Compl. at ¶¶ 16, 30, 37, 51.

Plaintiffs, individually, and on behalf of the proposed class, sought, among other things, injunctive relief allowing them to terminate all lease obligations. Compl. at ¶ 63. The value of an injunction for amount in controversy purposes is determined by reference to the larger of two figures: the injunction's worth to the plaintiff or its cost to the defendant. *See Dixon v. Edwards*, 290 F.3d 699, 710 (4th Cir. 2002). In *JH Tax*, the plaintiff, a franchisor of tax preparation practices, sued a former franchisee for money damages and injunctive relief for failing to comply with post-termination conditions in the relevant agreement. *JH Tax* at 637. While the plaintiff claimed less than the $75,000 jurisdiction amount in money damages, the Fourth Circuit held that the lower court, in dismissing the case, erred by failing to consider the value of the injunctive relief. *Id*. at 639.

Here, if the requested relief was granted (the termination of all lease obligations as of the date of the incident), the value of the injunctive relief to either Plaintiffs, including

3

proposed class members, or Defendants follows the total value of all leased apartments from the date of the incident.

There are 372 apartments at Axel. Compl. at ¶ 10. Axel advertises apartments available for monthly rent ranging from $1,839 to $4,019.[1] This suggests total monthly rental income ranging from $684,108 to $1,495,068, assuming full occupancy. This would not include additional fees, such as parking. Therefore, the lost rental income to Defendants (the value of the proposed injunctive relief to Defendants) would reach $5 million in as few as three months. Defendants would also face significant costs associated with complete turnover of the building, including marketing and brokerage fees, as well as costs associated with their ability to meet financial obligations (e.g. loan and interest payments) without rental income. Without discovery, Plaintiffs are unable to determine the precise amount of Defendants' loss if the requested injunctive relief was granted, but Defendants cannot argue at this stage that it would be "legally impossible" for the cost to reach $5 million.[2]

The value of the injunctive relief to Plaintiffs and the proposed class members is arguably greater, because it would include the value of the remaining lease obligations,

---

[1] https://www.axelbrewershill.com/availability (accessed 9/1/2025).

[2] Precise valuation of the injunctive relief would depend on, among other things: (1) the actual rent of each proposed class member; (2) the start and stop dates of each lease; (3) the average time for Defendants to fill a vacant apartment; (4) the marketing and carrying costs associated with filling a vacant apartment; and (5) the impact of the sudden availability of all 372 apartments on the previous two factors.

pre-judgment interest (Compl. at ¶ 63), and the significant costs associated with moving. *Id*.

Alternatively, a jury could award damages for loss of use and enjoyment of the apartments in an amount up to the market value of the lease. In a lease, the lessor passes to the lessee "everything that is essential or reasonably necessary to the full beneficial use and enjoyment of the property." *Jackson v. Birgfeld*, 189 Md. 552, 554, 56 A.2d 793, 794 (1948). Where the landlord breaches the tenants' right to the use and enjoyment of the premises, the tenant may recover damages for the difference between the value of what they should have received and the fair value of what they actually received. *Stevan v. Brown*, 54 Md. App. 235, 248, 458 A.2d 466, 474 (1983). Because a jury could award any amount of damages up to the full value of the lease, Defendants cannot say that it is "legally impossible" for Plaintiffs to recover in excess of CAFA's jurisdictional requirement.

At this stage, the Court cannot "pass judgment on the merits" of these valuations. *JH Tax*, at 639-640. When a factual attack on subject matter jurisdiction involves the merits of a dispute, "the proper course of action for the district court … is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." *Id*. (citing *United States v. North Carolina*, 180 F.3d 574, 580 (4th Cir. 1999)). All that matters is that the Court cannot say *with legal certainty* that Plaintiffs' requested relief is worth less than the requisite amount. *Id*. Emphasis original.

### C.  Whether any proposed Class Members Received Related Financial Compensation

Plaintiffs are unaware of any proposed class members that have received financial compensation. If any proposed class members have received such compensation, its impact

on the amount in controversy requirement would be to subtract the value from the total value of the injunctive relief.

### III. Conclusion

Even if Plaintiffs' total money damages are not likely to meet the $5 million jurisdictional amount under CAFA, the relevant question is whether Plaintiffs' good faith allegations in the Complaint plausibly state a claim for damages in excess of that amount. Because the Complaint, in good faith, plausibly alleges injunctive relief in excess of the jurisdictional amount, the Court should retain jurisdiction.

Dated: September 2, 2025

Kevin P. Sullivan, Esq., Fed Bar #27506
Sullivan Law, LLC
323 W. Camden Street, Suite 700
Baltimore, MD 21201
Ph: (443) 909-1450
kps@kpsullivanlaw.com

Alexandra M. Walsh (Bar No. 31193)
awalsh@anapolweiss.com
Patrick Huyett (*pro hac vice* forthcoming)
phuyett@anapolweiss.com
ANAPOL WEISS
One Logan Square
130 N. 18th St., Suite 1600
Philadelphia, PA 19103
Telephone: (202) 780-3014
Facsimile: (215) 735-2211

Respectfully Submitted,

/s/ *Thomas W. Keilty*

Thomas W. Keilty, III (#18992)
tkeilty@kblitigation.com
Nicholas C. Bonadio (# 13679)
nbonadio@kblitigation.com
Keilty Bonadio, LLC
3904 Boston Street Suite 403
Baltimore, Maryland 21224
410-469-9953

Benjamin S. Salsbury (#28850)
bsalsbury@ssm-lawyers.com
Salsbury Stringer and McCulley, LLC
100 N. Charles Street, Suite 900
Baltimore, MD 21201
443-869-3920

*Counsel for Plaintiffs*